UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUNSET EQUITIES LTD. and RON
HERSHCO,

                    Plaintiffs,

         - against -

DONALD J. URGO & ASSOCIATES, LLC,
URGO HOTEL MANAGEMENT, LLC,
URGO HOTELS LP, UH NASSAU
LIMITED, DONALD J. URGO, DONALD
J. URGO JR., KEVIN URGO, and
MATHEW JALAZO,

                    Defendants.

**ORDER**

22 Civ. 8857 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      In this diversity case, Plaintiffs Sunset Equities Ltd. and Ron Hershco

(collectively "Plaintiffs") bring claims of breach of contract, breach of the implied covenant of

good faith and fair dealing, negligent misrepresentation, fraud and deceit, aiding and abetting

fraud and deceit, and tortious interference against Defendants Donald J. Urgo & Associates,

LLC, Urgo Hotel Management, LLC, Urgo Hotels LLC (formerly Urgo Hotels LP), UH Nassau

Limited, Donald J. Urgo, Donald J. Urgo, Jr., Kevin Urgo, and Mathew Jalazo related to the

parties' unsuccessful collaboration in the development of a hotel in The Bahamas.  (Cmplt. (Dkt.

No. 1-3) ¶¶ 135-78)  On March 1, 2022, Defendants moved to dismiss "in deference to a prior

pending action" in the Commonwealth of The Bahamas.  (Dkt. No. 27)

      For the reasons stated below, Defendants' motion to dismiss will be denied, and

the matter will instead be stayed pending resolution of a parallel lawsuit in The Bahamas.

## BACKGROUND

I.    **FACTS**

    A.    **The New York Complaint**

        The Complaint was filed in Supreme Court of the State of New York, New York County, on September 15, 2022.  (Cmplt. (Dkt. No. 1-3))  Defendants removed the action to this District on October 17, 2022.  (Dkt. No. 1)

        The Complaint alleges that in 2013 Plaintiff Hershco formed Sunset Equities Ltd. for the purpose of acquiring the Nassau Palm Resort ("the Hotel") located at West Bay Street, Nassau, Bahamas.  (Cmplt. (Dkt. No. 1-3) ¶¶ 11-13)  After operating the Hotel as the Nassau Palm Resort for a period of time, Hershco "put plans in place to close operations, renovate the facility, and then re-open the [H]otel."  (Id. ¶ 15)  In early 2015, Plaintiffs completed a partial renovation of the Hotel and then "sought to re-brand" the location.  (Id. ¶¶ 18-19)

        As part of this rebranding effort, on September 3, 2015, Sunset Equities entered into a franchise agreement with Marriot Worldwide Corporation "for a conversion of the Site and its related facilities . . . to the Courtyard by Marriott brand."  (Id. ¶ 22)  The franchise agreement with Marriot required, inter alia, that Sunset Equities build "83 additional rooms" on the Hotel property.  (Id. ¶ 25)  Due to the "anticipated costs associated with the . . . renovation," Plaintiffs considered selling the Hotel and exiting the project.  (Id. ¶ 26)  To that end, in the fall of 2015, Sunset Equities' real estate firm introduced Hershco to Defendants Donald Urgo, Donald Urgo, Jr., Kevin Urgo, Mathew Jalazo, Urgo Hotel Management, and Urgo Hotels, who were purportedly interested in purchasing the Hotel.  (Id. ¶¶ 28)  The parties could not agree on a

purchase price, however, and Defendants instead offered to operate the Hotel for Plaintiffs.[1]  (Id. ¶¶ 35, 38)

In October 2015, during negotiations regarding Defendants' offer to operate the Hotel, Defendants conducted a site visit.  (Id. ¶¶ 28-29)  During the site visit, Defendants informed Plaintiffs that they were "licensed and authorized to do business in The Bahamas"; that they had a "long working history with Marriot"; and that they were "already approved to operate and manage other Marriot franchise locations in the Caribbean and they had everything in place to manage a hotel in The Bahamas."  (Id. ¶¶ 31-33)  Plaintiffs further allege that Defendants Jalazo and Kevin Urgo made similar statements during an October 29, 2015 conference call with Hershco, and during a December 7, 2015 meeting with Plaintiffs.  (Id. ¶¶ 40, 42-45)  Defendants also made "a pledge of up to $200,000 to be used towards pre-opening expenses of the Hotel."  (Id. ¶¶ 46)

In December 2015, Plaintiffs accepted Defendants' offer to manage the Hotel. Plaintiffs say that they did so in reliance on, inter alia, Defendants' pledge to provide $200,000 towards the Hotel's opening expenses and Defendants' "repeated assurances . . . of their competence, capacity, and capability to manage the Hotel."  (Id. ¶ 47)  On December 17, 2015, Sunset Equities entered into a management agreement with Defendant Donald J. Urgo & Associates, LLC (the "Management Agreement") through which the latter became the Hotel's manager.  (Id. ¶¶ 48, 49)

The Complaint alleges that Donald J. Urgo & Associates LLC was "immediately" in breach of the Management Agreement because it "did not at the [e]ffective [d]ate of the

---

[1]  The Complaint and the parties' briefs frequently refer to the Urgos, Jalazo, and the Urgo-affiliated entities collectively as "Defendants."

Managing Agreement, nor at any time since, have a license to do business in The Bahamas." (Id.

¶¶ 77, 80)  Plaintiffs further allege that such a license is required for non-Bahamians such as

Defendants to do business in The Bahamas, pursuant to Chapter 329 of the Statute Law of The

Bahamas, which provides that

> any person who contracts to commence the carrying on of any new business in
> The Bahamas shall make application for a business license prior to the
> commencement of any such contract and, if such person is not Bahamian, shall
> not carry on such business without a license being issued.

(Id. ¶ 64)

Section 4.01(C) of the Management Agreement provides that the manager of the

Hotel shall "maintain the various permits and licenses required to be held in its name that are

necessary to enable Manager to operate the Hotel in accordance with the terms of this

Agreement." (Cmplt., Ex. A (Dkt. No. 1-3) at 48)  Section 4.01(E) further provides that the

manager of the Hotel must "comply with all laws, ordinances, regulations and requirements of

any federal, state or municipal government that are applicable to the use and operation of the

Hotel." (Id. at 49)  Plaintiffs contend that Defendants violated these provisions of the

Management Agreement when they "began operating the Hotel without the requisite business

licensure or government approvals." (Id. ¶ 84)

The Complaint alleges that Defendants also breached the Management Agreement

(1) in January 2016, when they "sent William Hartmann to The Bahamas to live in the Hotel and

act as the Hotel's general manager," given that Hartmann "did not possess a permit to engage in

gainful employment in The Bahamas" (id. ¶¶ 87, 89, 91); and (2) in not providing the promised

$200,000 "to cover certain budgeted preopening expenses [of the Hotel]." (Id. ¶ 94)

Plaintiffs contend that they "made frequent demands of the Urgo Defendants that

they produce their business license," and that "when it became apparent that [Defendants] didn't

have a business license to operate in The Bahamas, the Urgo Defendants instead began making assurances that their lawyers had been working on obtaining same." (Id. ¶¶ 97-98)

On September 15, 2016, Sunset Equities "ordered the Urgo Defendants removed from the property and to cease and desist operations." (Id. ¶ 104)  Plaintiffs contend that Defendants "refused to accept the termination of the Management Agreement, and sought instead to leverage their position as Manager . . . into a payout on the contracts they themselves had breached." (Id. ¶ 108)

On February 13, 2017, Sunset Equities "entered into a new management agreement" with Aimbridge Hospitality, the company that served as the Hotel's operator prior to Defendants. (Id. ¶¶ 20, 115)  The Complaint alleges that when Defendant Donald Urgo learned about Sunset Equities' contract with Aimbridge, he "called Aimbridge and threatened them with litigation if they got involved with the Hotel." (Id. ¶ 121)  Aimbridge allegedly "succumbed to Donald J. Urgo's threats and declined Plaintiff's offer to re-engage" as the Hotel's operator. (Id. ¶ 125)

According to the Complaint, the Hotel project ended in a "complete and total loss" for Plaintiffs. (Id. ¶ 132)  On March 15, 2022, Sunset Equities conveyed the property to another party "as a result of a non-judicial sale forced upon the Plaintiffs as a result of their default in the financing agreements." (Id. ¶ 133)

## B.      Defendants' Answer and Counterclaims

Defendants filed an Answer with Counterclaims on November 22, 2022.  (Dkt. No. 9)

Defendants maintain that during the negotiation of the December 17, 2015 Management Agreement, "Plaintiffs, and specifically Plaintiff Ronald Hershco, made numerous material misrepresentations to Defendants regarding Plaintiffs' financial ability and access to

5

funding for the remainder of the [Hotel] project, including but not limited to the conversion of the [Hotel] to a Courtyard by Marriott." (Def. Counterclaims (Dkt. No. 9) ¶ 6)

Defendants also contend that "[t]hroughout 2015 and into 2016," they "expended significant resources pursuant to the Management Agreement in order to assist Plaintiffs with the conversion of the [Hotel] to a Courtyard by Marriott." (Id. ¶ 8) And while Defendants "fulfilled all of their obligations under the Management Agreement" through 2016 and 2017, "during that same period it became clear that Plaintiffs did not have the financial ability or wherewithal to not only meet their financial obligations to Defendants, but also for the completion of the Courtyard by Marriott in general." (Id. ¶ 14)

According to Defendants, Plaintiffs (1) "deliberately interfered with and refused to provide the documentation necessary to convert the operator business license from Plaintiffs' prior operator to Defendants' management entity" (id. ¶¶ 16-17); and (2) did not make required payments of $555,951 to Defendants, including $239,491.60 due under Section 6.01A of the Management Agreement, $44,639.37 due under Section 6.01B of the Management Agreement, and $271,820.03 due under Sections 6.03A, B, and C of the Management Agreement. (Id. ¶¶ 21-23)

In July 2017, Defendants informed Plaintiffs that they were "in breach of contract and that significant sums were owed by Plaintiffs to Defendants." (Id. ¶ 24) Despite "repeated demands," Plaintiffs "refused to pay" the sums they allegedly owe Defendants under the Management Agreement. (Id. ¶ 25)

Defendants assert counterclaims for, inter alia, fraud, negligent misrepresentation, breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, and tortious interference. (Id. ¶¶ 32-78)

C.      **The Bahamian Action**

On August 21, 2017, Defendants Donald J. Urgo and Associates, LLC and UH Nassau Limited filed an action against Sunset Equities in Supreme Court of the Commonwealth of The Bahamas, Commercial Division, CLE/gen/No. 00967 (the "Bahamian Action").  (Druck Decl., Ex. B., Writ and Statement of Claim ("Bahamas Complaint") (Dkt. No. 29-2))  In the Bahamas Complaint, Donald J. Urgo and Associates, LLC and UH Nassau Limited allege that Sunset Equities breached the Management Agreement by (1) failing to make required payments totaling $555,951 (id. at 4-5, ¶ 8); and (2) obstructing their ability to manage the Hotel between 2015 and 2017.  (Id. at 5-6, ¶ 10)  The claims in the Bahamas Complaint mirror Defendants' counterclaims in the instant action.   (Compare Bahama Complaint (Dkt. No. 29-2) ¶¶ 8, 10 with Def. Counterclaims (Dkt. No. 8) ¶¶ 21-23, 26-27).

On October 11, 2017, Sunset Equities filed a Defense and Counterclaim alleging that Donald J. Urgo and Associates, LLC and UH Nassau Limited had breached their obligations under the Management Agreement through their "failure to obtain the requisite permits and approvals under Bahamian law" necessary to operate the Hotel.  (Druck Decl., Ex. A, Re-Amended Defence and Re-Amended Counterclaim (the "Bahamas Counterclaim") (Dkt. No. 29-1) at 13, ¶ 9)

The parties have actively litigated the Bahamian Action since 2017.  (See Def. Br. (Dkt. No. 28) at 9; Pltf. Opp. (Dkt. No. 34) at 6-7)  For example, plaintiffs in the Bahamian Action moved for summary judgment in 2018.  (Jan. 24, 2023 Def. Ltr. (Dkt. No. 19) at 2)  The Bahamian court denied that motion in a February 26, 2019 written opinion.  (Id.)  On April 24, 2019, the Bahamian court issued an injunction barring Sunset Equities from removing certain assets from The Bahamas and from selling the Hotel.  (Druck Decl., Ex. C, Order (Dkt. No. 29-3) at 3, ¶ 1)  The Bahamian court set a trial date in September 2019, but that date was adjourned

when both sides retained new counsel shortly before trial.  (Jan. 24, 2023 Def. Ltr. (Dkt. No. 19) at 2)  On January 31, 2020, plaintiffs in the Bahamian action filed an "Amended Statement of the Claim" (Druck Decl., Ex. E. (Dkt. No. 29-5) at 1), and on February 11, 2020, they filed "Further and Better Particulars of the Amended Statement of the Claim."  (Druck Decl., Ex. D. (Dkt. No. 29-4) at 1)  While trial was expected to begin in 2021, the court adjourned trial in order to review several outstanding applications from the parties.  (Jan. 24, 2023 Def. Ltr. (Dkt. No. 19) at 2-3)

On March 24, 2023, the Bahamian court denied Sunset Equities' application to make a preliminary determination of certain issues in advance of trial.  (Druck Reply Decl., Ex. B, Ruling (Dkt. No. 33-2) at 9)

## II.    <u>PROCEDURAL HISTORY</u>

The Complaint was filed in Supreme Court of the State of New York, New York County, on September 15, 2022.  (Cmplt. (Dkt. No. 1-3))  Defendants removed the action to this District on October 17, 2022, citing diversity of citizenship pursuant to 28 U.S.C. § 1332. (Notice of Removal (Dkt. No. 1) ¶¶ 20-22)

Defendants moved to dismiss on March 1, 2023.  (Dkt. No. 27)  Plaintiffs filed their opposition brief on April 12, 2023 (Dkt. No. 24), and Defendants filed a reply on April 19, 2023.  (Dkt. No. 32)

## <u>DISCUSSION</u>

Defendants contend that this action should be dismissed "based on international comity and in deference to [the] prior pending action in The Bahamas."  (Def. Br. (Dkt. No. 28) at 5)  Plaintiffs respond that Defendants "have failed to meet their heavy burden of demonstrating the requisite exceptional circumstances" justifying dismissal in favor of an action pending in a foreign venue.  (<u>Id</u>. at 8)

I.    **LEGAL STANDARDS**

While this Court has "the inherent power to dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction," <u>Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.</u>, No. 12 CIV. 7249 PAE, 2013 WL 2531277, at *2 (S.D.N.Y. June 10, 2013), as a general matter, "concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict." <u>Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.</u>, 466 F.3d 88, 92 (2d Cir. 2006). "Parallel proceedings in the same <u>in personam</u> claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as <u>res judicata</u> in the other." <u>Id.</u> (citations and quotation marks omitted). Accordingly, "[t]he mere existence of parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" <u>Id.</u> (quoting <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976). In considering whether to defer to a parallel proceeding in a foreign jurisdiction, "a district court should be guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." <u>Royal and Sun Alliance</u>, 466 F.3d at 94. Finally, the Supreme Court has made clear that "[o]nly the clearest of justifications will warrant dismissal." <u>Colorado River</u>, 424 U.S. at 819.

The first step in making a determination as to whether abstention or a stay is appropriate is "to establish whether the proceedings are 'parallel' – that is, proceedings in which 'substantially the same [parties are] litigating substantially the same issues' simultaneously in two fora." <u>Tarazi v. Truehope Inc.</u>, 958 F. Supp. 2d 428, 433 (S.D.N.Y. 2013) (brackets in <u>Tarazi</u>) (quoting <u>Royal and Sun Alliance</u>, 466 F.3d at 94). Parties "are 'substantially similar' for the purposes of [an abstention] analysis when they are affiliates or have a similarly close relationship." <u>Id.</u> Issues are substantially similar when, for example, a decision in one action

will have "significant bearing" or "res judicata effect" on the other.  Ole Media, 2013 WL 2531277, at *4.

Where the U.S. action and the foreign action are in fact parallel proceedings, a district court must evaluate "whether exceptional circumstances exist that justify the surrender of [its] jurisdiction." Royal and Sun Alliance, 466 F.3d at 93.  In making this determination, courts consider, inter alia,

> the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction.

Id.  This list is "not exhaustive," however, and courts should "examine the totality of the circumstances to determine whether the specific facts before it are sufficiently exceptional to justify abstention."  Id. (internal citation and quotation marks omitted).

## II.   ANALYSIS

### A.   Whether the Instant Action and the Bahamian Action Are Parallel Proceedings

#### 1.   Similarity of Parties

As to similarity of parties, Sunset Equities is party to both actions.  And while Ron Hershco is only a party to the instant action, the Complaint alleges that he "formed Sunset Equities [in order] to acquire the [property] and to own the Hotel" that is the subject of both the Bahamian Action and the instant action.  (Cmplt. (Dkt. No 1-3) ¶ 13)

Donald J. Urgo and Associates, LLC and UH Nassau Limited are party to both actions.  (Cmplt. (Dkt. No. 1-3) ¶¶ 3, 6; Bahamas Cmplt. (Dkt. No. 29-2) at 2, ¶¶ 1-2)  While Donald Urgo, Donald Urgo, Jr., Kevin Urgo, Mathew Jalazo, Urgo Hotel Management, LLC, and Urgo Hotels LLC are only parties to the instant action, Defendants have alleged that Donald Urgo, Donald Urgo, Jr., and Kevin Urgo are members of Donald J. Urgo & Associates, LLC.

(Notice of Removal (Dkt. No. 1) ¶ 11)  Moreover, Defendant Urgo Hotel Management, LLC is a "a single-member LLC whose member is Donald J. Urgo & Associates, LLC." (Id. ¶ 12)  And Urgo Hotels LLC (formerly Urgo Hotels LP) is

> a Limited Liability Company (no longer a Limited Partnership).  Its single member was Urgo Hotels Holdings LP and the members of Urgo Hotels Holdings LP were Urgo Lodging Management, LLC and its members were Donald J. Urgo . . . Donald J. Urgo, Jr. . . . Collin Urgo . . . and Kevin Urgo . . . who are also the members of Urgo Lodging Management, LLC.

(Id. ¶ 13)  As to Defendant Mathew Jalazo, the Complaint alleges that he was "introduced" to Plaintiffs in 2015 with the Urgo Defendants in connection with the parties' negotiation of the Management Agreement (Cmplt. (Dkt. No. 1-3) ¶ 28); that he stated that Defendants were "licensed and authorized to do business in The Bahamas" on several occasions prior to the execution of the Management Agreement (id. ¶¶ 31, 40, 44); and that he "participated in the creation of the Management Agreement and specifically authorized, approved, and directed its contents." (Id. ¶ 54)

In sum, there is substantial similarity between the parties in the instant case and the parties in the Bahamian Action, and Plaintiffs do not contend otherwise.  (See Pltf. Opp. (Dkt. No. 34) at 6-8, 12)  While Plaintiffs point out that the parties are not exactly the same (see id. at 12), "the relevant test is whether the parties are substantially similar," not whether they are "identical." Ole Media Mgmt., 2013 WL 2531277, at *3; see also Royal & Sun Alliance, 466 F.3d at 94–95 ("For two actions to be considered parallel, the parties in the actions need not be the same, but they must be substantially the same . . . ."); Argus Media Ltd. v. Tradition Fin. Servs. Inc., No. 09 CIV. 7966 (HB), 2009 WL 5125113, at *6 (S.D.N.Y. Dec. 29, 2009) (parties sufficiently similar to justify a stay where "both actions involve [d]efendants' (and/or their affiliates') right to copy and distribute [plaintiff's] copyrighted work").

2.     **Similarity of Issues**

As to similarity of issues, Sunset Equities contends in both the instant case and in the Bahamian Action that

1.    Defendants breached the Management Agreement by failing to obtain all the licenses necessary to conduct business in The Bahamas (Cmplt. (Dkt. No 1-3) ¶ 84; Bahamas Counterclaim (Dkt. No. 29-1) at 12-13, ¶¶ 7, 9);

2.    Defendants misrepresented their qualifications to do business in The Bahamas prior to the execution of the Management Agreement (Cmplt. (Dkt. No 1-3) ¶¶ 150-63; Bahamas Counterclaim (Dkt. No. 29-1) at 12, ¶ 8); and

3.    Defendants improperly interfered with Sunset Equities' efforts to enter into a contract with a new management firm.  (Cmplt. (Dkt. No 1-3) ¶¶ 173-78; Bahamas Counterclaim (Dkt. No. 29-1) at 16-17, ¶ 14).

And in both actions, the Urgos and the Urgo entities allege that

1.    Sunset Equities did not make required payments of $555,951 that were due and owing under the Management Agreement (Def. Counterclaims (Dkt. No. 9) ¶¶ 21-23; Bahamas Cmplt. (Dkt. No. 29-2) at 4, ¶ 6);

2.    Sunset Equities obstructed Defendants' ability to manage the Hotel by, inter alia, failing to provide Defendants with sufficient working capital.  (Def. Counterclaims (Dkt. No. 9) ¶ 27; Bahamas Cmplt. (Dkt. No. 29-2) at 5, ¶ 10);

3.    they fulfilled their obligations under the Management Agreement to the extent feasible in light of Sunset Equities' obstruction (Def. Counterclaim (Dkt. No. 9) ¶ 14; Bahamas Cmplt. (Dkt. No. 29-2) at 4, ¶ 7)

Accordingly, there is clearly "substantial overlap between the issues" involved in the instant action and the Bahamian action, such that a final judgment in the Bahamian Action may have a "significant bearing" on the instant case and perhaps "res judicata effect." Ole Media, 2013 WL 2531277, at *4.  To the extent that the two cases involve somewhat different claims and factual allegations, "[s]uits proceeding under different legal regimes need not plead identical theories of relief when they seek adjudication of substantially similar wrongdoing causing substantially similar injury." Kingstown Cap. Mgmt., L.P. v. Vitek, No. 19CV3170 (DLC), 2020 WL 5350492, at *6 (S.D.N.Y. Sept. 4, 2020).

Because the parties and issues involved in the two lawsuits are substantially similar, the Court concludes that the two lawsuits are parallel proceedings, and that this factor favors abstention or a stay.

**B.       Exceptional Circumstances**

The Court next considers whether "exceptional circumstances" exist that warrant abstention, Royal and Sun Alliance, 466 F.3d at 95, or whether a stay should be issued.

**1.       Connections with The Bahamas and with the United States**

As discussed above, both actions turn on the parties' obligations under the Management Agreement.  That agreement governs the operation of a hotel that is located in The Bahamas.  (Cmplt. (Dkt. No. 1-3) ¶¶ 11, 48)  Moreover, the Management Agreement was negotiated at least in part in The Bahamas (Cmplt. (Dkt. No. 1-3) ¶¶ 29-31), and it appears likely that witnesses and evidence bearing on the parties' factual disputes are located – at least in part – in The Bahamas.

The Management Agreement also provides that Bahamian law controls.  (Cmplt., Ex. A (Dkt. No. 1-3) at 76 ("This Agreement shall be construed under and shall be governed by the laws of the State where the Hotel is physically located.")  And in both actions, Sunset Equities alleges that the Urgos and the Urgo-related entities breached the Management Agreement by failing to comply with Bahamian law – that is, Chapter 329 of the Statute Law of The Bahamas.  (Cmplt. (Dkt. No. 1-3) ¶ 64)  Because the two actions involve disputed questions of Bahamian law, and "[b]ecause the document that lies at the foundation of these actions has a close connection with the foreign forum and is to be interpreted according to the laws of the foreign forum, it is appropriate to defer to that forum." Tarazi, 958 F. Supp. 2d at 436.

Plaintiffs argue, however, that the instant action has ties to New York because (1) Hershco resides in New York (Pltf. Opp (Dkt. No. 34) at 12); (2) "eight of the ten parties [are]

13

. . . United States domiciliaries" (id.); and (3) the Management Agreement was negotiated partly in New York, and partly in The Bahamas.  (Id.; Cmplt. (Dkt. No. 1-3) ¶ 43).

As an initial matter, Plaintiffs' assertion that "eight of the ten parties . . . are United States domiciliaries" does not establish ties to New York.  Indeed, the only party that is a resident of New York is Plaintiff Hershco.  And as to Plaintiff Hershco, he chose to (1) invest in a hotel located in The Bahamas; (2) incorporate Sunset Equities in The Bahamas; and (3) enter into a Management Agreement that provides for the application of Bahamian law.  In other words, "the source of this litigation was [Plaintiff Hershco's] decision to make an investment in [The Bahamas]," and that decision "significantly diminish[es] the amount of . . . deference [to be afforded to his choice of forum.]"  Kingstown, 2020 WL 5350492, at *9.

In sum, the instant case's ties to New York are far outweighed by its ties to The Bahamas.  Accordingly, this factor weighs in favor of abstention or a stay.

### 2.      First-Filed Case and Status of Foreign Proceeding

Courts "have traditionally accorded great weight to the first suit filed [factor]." United Bank for Africa PLC v. Coker, No. 94 Civ. 0655, 2003 WL 22741575, at *3 (S.D.N.Y. Nov. 18, 2003).  This factor weighs more heavily in favor of dismissal where the first action has "reached a more advanced stage" than the later action.  Taub v. Marchesi Di Barolo S.p.A, No. 09 CV 599, 2009 WL 4910590, at *6 (E.D.N.Y. Dec. 10, 2009).

Here, the Bahamian Action was filed in 2017, five years before Plaintiffs filed the instant case.  (Bahamas Cmplt. (Dkt. No. 29-2))  As discussed above, the Bahamian Action has been heavily litigated:  the parties have engaged in discovery and dispositive and other motion practice; amended pleadings have been filed; the Bahamian court has issued rulings concerning motions for injunctive relief, for summary judgment, and for a preliminary determination as to the legal issues expected to be raised at trial.  Multiple trial dates have been set.  In sum, the

Bahamian Action is at an advanced stage, and this factor likewise weighs in favor of abstention or a stay.

### 3.    <u>Convenience of the Parties</u>

As to the convenience of the parties – other than Hershco's residence in New York – nothing suggests that New York is a more convenient forum than The Bahamas.  Of the ten parties to the instant action, only Hershco resides in New York.  And, as discussed above, the hotel at issue is located in The Bahamas; Plaintiff Sunset Equities Ltd. and Defendant UH Nassau Limited are incorporated in The Bahamas; and the parties have been engaged in litigation in The Bahamas for seven years.  (Notice of Removal (Dkt. No. 1) ¶¶ 10, 14).  Finally, Hershco chose to enter into the business venture in The Bahamas that is at the center of the parties' dispute, and this fact "significantly diminish[es] the amount of . . . deference" this Court owes to his choice of forum.  <u>Kingstown</u>, 2020 WL 5350492, at *9.

The Court concludes that the convenience to the parties' factor does not weigh heavily against abstention or a stay.

### 4.    <u>Adequacy of Bahamian Forum</u>

It is undisputed that the Bahamian court system is capable of affording full and adequate relief with respect to the claims at issue in the Bahamian Action.  (Pltf. Opp. (Dkt. No. 34) at 13); Def. Br. (Dkt. No. 28) at 18)  As discussed above, Sunset Equities has asserted counterclaims in the Bahamian Action that are substantially similar to many of its claims in the instant case, and it has been litigating those counterclaims in the Bahamian Action since 2017.

Plaintiffs argue, however, that "[g]iven an absence from The Bahamas litigation of seven of the ten parties to this action, many of the principal issues in this litigation will not be addressed in The Bahamas action."  (Pltf. Opp. (Dkt. No. 34) at 13)  But it is far from clear why this would be so.  Two of the Defendants in the instant action – Donald J. Urgo and Associates,

LLC and UH Nassau Limited – are plaintiffs in the Bahamian Action.  The remaining

Defendants in the instant action appear to be in privity with the Urgo-related entities in the

Bahamian Action.  Accordingly, the Court is not persuaded that "the principal issues in [the

instant] litigation will not be addressed in The Bahamas action."   (Id.)

       The adequacy of The Bahamas as a forum weighs in favor of abstention or a stay.

### 5.      Potential Prejudice

       Defendants claim that if the instant action is permitted to proceed, they will suffer

prejudice as a result of bearing "'the burden and expense of litigating both overlapping actions

simultaneously.'" (Def. Br. (Dkt. No. 28) at 18 (quoting FRHUEB, Inc. v. Abdala, No.

21CV7395RAKHP, 2022 WL 7150242, at *3 (S.D.N.Y. Sept. 30, 2022)); id. (citing Ole Media,

2013 WL 2531277 at *5 ("There is no doubt that [defendants] are significantly inconvenienced

by allowing both actions to proceed, given the partial duplication among them.")))

       While Defendants would undoubtedly face greater expense if both actions

proceed simultaneously, that circumstance "routinely exist[s] in connection with parallel

litigation" and thus "cannot reasonably be considered exceptional circumstances" that merit

abstention.  Royal & Sun Alliance, 466 F.3d at 95.

       Plaintiffs argue that they will suffer prejudice if the instant action is dismissed,

because they will be left "without recourse" if they are unable to obtain jurisdiction in The

Bahamas over the Defendants who are not party to the Bahamian Action.  (Pltf. Opp. (Dkt. No.

34) at 15-16)  But it is entirely speculative whether or not (1) Plaintiffs will ever seek to bring

claims in The Bahamas against Defendants in the instant action who are not named in the

Bahamian Action; and (2) a Bahamian court would be able to exercise jurisdiction over parties named in the instant action that are not named in the Bahamian Action.[2]

Accordingly, this factor is neutral.

### 6.      Judicial Economy

As to judicial economy, deferring to the Bahamian Action – whether by abstention or the issuance of a stay – will allow the Bahamian court to address the meaning of the Management Agreement under Bahamian law – an issue central to the parties' dispute – without duplication of effort or need for this Court to solicit "[w]ritten or oral expert testimony" concerning Bahamian law. Bigio v. Coca-Cola Co., No. 97 CIV. 2858 BSJ, 2010 WL 3377503, at *4 (S.D.N.Y. Aug. 23, 2010); see also Tarazi, 958 F. Supp. 2d at 436 ("[T]he interests of judicial economy will be best served by a stay, which will allow the Albertan court to address the meaning of the Exclusivity Agreement under Alberta law without duplication of effort by this Court and without the need for expert testimony."); Ole Media, 2013 WL 2531277, at *4 ("A stay of this action would advance the interest of judicial economy by avoiding duplicative litigation of an identical issue."); Thornton Tomasetti, Inc. v. Anguillan Dev. Corp., No. 14-CV-7040 JPO, 2015 WL 7078656, at *4 (S.D.N.Y. Nov. 13, 2015) ("Simultaneous litigation over identical issues would result in a waste of judicial resources.").

Thus, the interests of judicial economy weigh in favor of abstention or the issuance of a stay.

\*        \*        \*        \*

---

[2]  Plaintiffs also contend that if the instant action is dismissed, they could face unspecified "statute of limitations issues not otherwise presently an issue." (Pltf. Opp. (Dkt. No. 34) at 15) The Court gives no weight to this vague and speculative assertion.

Given (1) the substantial overlap between the parties and issues involved in the instant action and the Bahamian Action; (2) the advanced stage of the Bahamian Action, which has been pending for seven years and was filed five years before the instant action; (3) the adequacy of The Bahamas as a forum for the parties' disputes; (4) the instant action's substantial ties to The Bahamas, including the fact that the agreement at issue is governed by Bahamian law; and (5) the interests of judicial economy in avoiding duplicative litigation, this Court concludes that "exceptional circumstances" exist that warrant abstention or, in the alternative, a stay.

## III.   <u>WHETHER DISMISSAL OR A STAY IS APPROPRIATE</u>

Defendants contend that the instant action should be dismissed.  They do not address whether a stay would be appropriate.  (Def. Mot. (Dkt. No. 27); Def. Br. (Dkt. No. 28)) Plaintiffs oppose Defendants' motion to dismiss but do not address whether a stay should be issued.  (Pltf. Opp. (Dkt. No. 34) 4-5)

It is well settled that this Court has "the inherent power to . . . stay" the instant case in light of the Bahamian Action.  <u>Ole Media</u>, 2013 WL 2531277, at *2.  Indeed, the Second Circuit has instructed that district courts should consider issuing a stay as an alternative to a dismissal premised on abstention:

> [A] measured temporary stay need not result in a complete forfeiture of jurisdiction.  As a lesser intrusion on the principle of obligatory jurisdiction, which might permit the district court a window to determine whether the foreign action will in fact offer an efficient vehicle for fairly resolving all the rights of the parties, such a stay is an alternative that normally should be considered before a comity-based dismissal is entertained.

<u>Royal and Sun Alliance</u>, 466 F.3d at 96.  Accordingly, "[e]ven where courts have declined to dismiss an action pending a prior parallel action in a foreign court, a stay has often been viewed as the appropriate intermediate measure."  <u>Ole Media</u>, 2013 WL 2531277, at *6; <u>see also</u> <u>Quanzhou Joerga Fashion Co. v. Brooks Fitch Apparel Grp.</u>, LLC, No. 10 CIV. 9078 MHD,

2012 WL 4767180, at *12 (S.D.N.Y. Sept. 28, 2012) (issuing stay in light of pending parallel litigation in China); Argus Media, 2009 WL 5125113, at *6 (issuing stay in light of pending litigation in the United Kingdom).

Given all the circumstances discussed above, including the rigorous standards that apply to abstention; the substantial overlap between the parties and issues involved in the two actions; the advanced stage of the Bahamian Action; the adequacy of The Bahamas as a forum; the applicability of Bahamian law; the interests of judicial economy; and the possibility that a party to the Bahamian Action may seek enforcement of a judgment rendered in that action in the United States, the Court concludes that a stay of the instant action – rather than dismissal – is appropriate.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is denied, and the instant action is stayed pending resolution of the Bahamian Action.  The Clerk of Court is directed to terminate the motion (Dkt. No. 27).

The parties will submit a joint letter every 90 days apprising this Court of the status of the Bahamian Action.

Dated: New York, New York
     March 20, 2024

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge